IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ROBERT ISADORE RICHARDSON,

        Petitioner,

v.                                           Civil Action No. 3:07CV93
                                          Criminal Action No. 3:05CR40

UNITED STATES OF AMERICA,        (JUDGE BAILEY)

        Respondent.

**REPORT AND RECOMMENDATION
THAT §2255 MOTION BE DENIED AS TO THREE GROUNDS, SETTING AN
EVIDENTIARY HEARING ON GROUND TWO, APPOINTING COUNSEL FOR THE
EVIDENTIARY HEARING AND PROVIDING THAT COUNSEL, PARTIES AND
WITNESSES MORE THAN 40 MILES FROM THE WHEELING POINT OF HOLDING
COURT MAY APPEAR BY VIDEO OR TELEPHONE CONFERENCING**

**I. INTRODUCTION**

On July 27, 2007, *pro se* petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside or Correct Sentence by a Person in Federal Custody.[1] The Government was ordered to answer petitioner's Motion Under 28 U.S.C. § 2255 on October 5, 2007.[2] On November 1, 2007, the Government filed a Motion for Extension of Time to File Response.[3] The Government filed its response on November 29, 2007.[4] By Order dated February 7, 2008, this Court denied the Government's Motion for Extension of Time to File Response as moot. Petitioner then filed

---

[1] Docket No. 103

[2] Docket No. 105

[3] Docket No. 107

[4] Docket No. 109

1

a Motion for Extension of Time to File a Reply on February 26, 2008,[5] and filed his Response in Opposition on March 4, 2008.[6] On March 12, 2008, this Court denied as moot, petitioner's Motion for Extension of Time to File a Reply.[7] Petitioner then filed a Supplemental Brief on April 7, 2008.[8]

## II. FACTS

A. **Conviction and Sentence**

On May 8, 2006, petitioner signed a plea agreement by which he agreed to plead guilty to Count 2 of the Indictment returned in criminal action number 3:05CR40–possession with intent to distribute 16.20 grams of cocaine base, also known as "crack," in violation of Title 21, United States Code, Section 841(a)(1). In the plea agreement, the parties stipulated to a total drug relevant conduct of 4.0 grams of cocaine hydrochloride and approximately 140 grams of cocaine base, also known as "crack." Additionally, the petitioner waived his right to appeal and to collaterally attack his sentence. Specifically, the petitioner's plea agreement contained the following language regarding his waiver:

> 10. Defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, and in exchange for the concessions heretofore made by the United States in this plea agreement, Defendant knowingly and voluntarily waives the right to appeal any sentence which is within the maximum provided in the statute of conviction or in the manner in which that sentence was determined on any ground whatever, including those grounds set forth in Title 18, United States Code, Section 3742. Defendant also waives his right to challenge his sentence or the manner in

---

[5]Docket No. 110

[6]Docket No. 111

[7]Docket No. 112

[8]Docket No. 113

> which it was determined in any collateral attack, including but not limited to, a motion brought under Title 28, United States Code, Section 2255 (habeas corpus). The United States does not waive its right to appeal the sentence, in the event that there would be an appeal by the United States, Defendant's waiver contained ini this paragraph will be voided provided Defendant complies with the provisions of Rule 4(b)(1)(A)(ii) of the Federal Rules of Appellate Procedure.

On May 8, 2006, the petitioner entered his plea in open court. Petitioner was 40 years old and a high school graduate. (Plea transcript p. 5). Petitioner stated he understood and agreed with all the terms and conditions of the plea agreement. (Id. at 13). The Court specifically asked if petitioner understood the waiver of appellate and post-conviction relief rights. (Id.). The Court asked petitioner's counsel if he believed petitioner understood the waiver of appellate and post-conviction relief rights. (Id.). The Court then reviewed all the rights petitioner was giving up by pleading guilty. (Id. at 13-22). During the plea hearing, the Government presented the testimony of Officer Bean of the West Virginia State Police, Bureau of Criminal Investigations, Eastern Panhandle Drug and Violent Crimes Task Force to establish a factual basis for the plea. (Id. 22-23). The petitioner did not contest the factual basis of the plea. (Id. at 24).

After the Government presented the factual basis of the plea, the petitioner advised the Court that he was guilty of Count 2 of the indictment. (Id. at 24-25). The petitioner further stated under oath that no one had attempted to force him to plead guilty, and that he was pleading guilty of his own free will. (Id. at 25). In addition, he testified that the plea was not the result of any promises other than those contained in the plea agreement. (Id.). The petitioner testified that his attorney had adequately represented him, and that his attorney had left nothing undone. (Id. at 25-26). Finally, petitioner said he was in fact guilty of the crime to which he was pleading guilty. (Id. at 26).

At the conclusion of the hearing, the Court determined that the plea was made freely and voluntarily, that the petitioner understood the consequences of pleading guilty; and that the elements of Count 2 were established beyond a reasonable doubt. (Id.). The petitioner did not object to the Court's finding.

On August 8, 2008, the petitioner appeared before the Court for sentencing. After considering several factors, including the circumstances of both the crime and the defendant, and the sentencing objectives of punishment, the Court sentenced the petitioner to a term of 210 months imprisonment, 4 years supervised release, a fine of $1,100.00 and a special assessment of $100.00. The Court entered its Judgment on August 28, 2006.[9]

**B.      Appeal**

Petitioner did not file an appeal of his conviction or sentence.

**C.      Federal Habeas Corpus**

On July 27, 2007, petitioner initiated this case under 28 U.S.C. § 2255. In the petition, and the brief in support, petitioner asserts that counsel rendered ineffective assistance because his counsel:

>    1) did not competently handle petitioner's Motion to Suppress ;

>    2) did not file a notice of appeal when asked to do so immediately after sentencing;

>    3) did not obtain Brady v. Maryland discovery concerning one of petitioner's prior
>         state convictions in Maryland, which should have been used to attack the career
>         offender enhancement;

>    4) failed to challenge an insufficient indictment.

---

[9]Docket No. 98

4

In response, the Government contends that relief should be denied on all claims because:

1) the petitioner waived his appellate and collateral attack rights by signing the plea agreement;

2) the petitioner offers conclusory opinions and inaccurate legal theories regarding suppression of evidence;

3) the petitioner stated at the Change of Plea Hearing that he was pleased with counsel's performance and that counsel left nothing undone;

4) petitioner's counsel stated in an affidavit that he was terminated as counsel immediately after the Sentencing Hearing;

5) petitioner's former counsel was informed of petitioner's desire to file an appeal through a letter, which counsel responded to stating that he could and would not represent petitioner;

6) petitioner had plenty of time to contact the Clerk of Court for appointment of counsel if he wished to file an appeal;

7) petitioner's *Brady* claim is virtually incomprehensible and petitioner stated, under oath, at the sentencing hearing that he reviewed the pre-sentence report with his attorney; and

8) the indictment is sufficient and there were no grounds upon which counsel could have objected to it.

**D.** **Recommendation**

Based upon a review of the record, the undersigned recommends that all of the claims, except the failure to file a Notice of Appeal, be denied and dismissed from the docket because

petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack the sentence.

### III. ANALYSIS

**A.     Waiver**

"[T]he guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned." Blackledge v. Allison, 431 U.S. 63, 71 (1977). However, the advantages of plea bargains "can be secure . . . only if dispositions by guilty plea are accorded a great measure of finality." Id. "To this end, the Government often secures waivers of appellate rights from criminal defendants as part of their plea agreement." United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005).

In United States v. Attar, 38 F.3d 727 (4th Cir. 1994), the Fourth Circuit found that "a waiver-of-appeal-rights provision in a valid plea agreement is enforceable against the defendant so long as it is the result of a knowing and intelligent decision to forgo the right to appeal." Attar, 38 F.3d at 731. The Fourth Circuit then found that whether a waiver is knowing and intelligent "depends upon the particular facts and circumstances surrounding [its making], including the background, experience, and conduct of the accused." Id. After upholding the general validity of a waiver-of-appeal-rights provision, the Fourth Circuit noted that even with a waiver-of-appeals-rights provision, a defendant may obtain appellate review of certain limited grounds. Id. at 732. For example, the Court noted that a defendant "could not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." Id. Nor did the Court believe that a defendant "can fairly be said to have waived his right to appeal his

6

sentence on the ground that the proceedings following the entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel." Id.

Subsequently, in United States v. Lemaster, supra, the Fourth Circuit saw no reason to distinguish between waivers of direct appeal rights and waivers of collateral attack rights. Lemaster, 403 F.3d at 220. Therefore, like waiver-of-appeal-rights provision, the Court found that the waiver of the right to collaterally attack a sentence is valid as long as it is knowing and voluntary. Id. And, although, the Court expressly declined to address whether the same exceptions apply since Lemaster failed to make such an argument, the court stressed that it "saw no reason to distinguish between waivers of direct-appeal rights and waivers of collateral-attack rights." Id. at n. 2.

Based on these cases, it appears that ineffective assistance of counsel claims are barred by a valid waiver, to the extent that the facts giving rise to the claims occurred prior to the defendant entering his guilty plea. Only claims arising after the entry of the guilty plea may fall outside the scope of the waiver. Lemaster, 403 F.3d at 732 (it cannot be fairly said that a defendant "waived his right to appeal his sentence on the ground that the proceedings following entry of the guilty plea were conducted in violation of the Sixth Amendment right to counsel, for a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations.")

Therefore, when reviewing an ineffective assistance of counsel claim in a case where there is a waiver of collateral-attack rights in a plea agreement, we must first determine whether there is valid waiver. In doing so,

> The validity of an appeal waiver depends on whether the defendant knowingly and intelligently agreed to waive the right to appeal.

> Although this determination is often made based on adequacy of the plea colloquy -- specifically, whether the district court questioned the defendant about the appeal waiver – the issue ultimately is evaluated by reference to the totality of the circumstances. Thus, the determination must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.

United States v. Blick, 408 F.3d 162, 169 (4th Cir. 2005) (internal citations and quotations omitted).

In other words, the Court must examine the actual waiver provision, the plea agreement as a whole, the plea colloquy, and the defendant's ability to understand the proceedings. Id. If the Court finds that the waiver is valid, any IAC claims arising prior to the plea agreement are barred by the waiver.

As to any IAC claims made regarding an attorney's action, or lack thereof, after the plea agreement, the Fourth Circuit has stated, "[w]e do not think the general waiver of the right to challenge" a sentence on the ground that "the proceedings following entry of the guilty plea – including both the sentencing hearing itself and the presentation of the motion to withdraw their pleas – were conducted in violation of their Sixth Amendment right to counsel." Lemaster, 403 F.3d at 732-33. Therefore, upon first blush it appears that IAC claims arising after the guilty plea and/or during sentencing, are not barred by a general waiver-of appeal rights.

However, several courts have distinguished IAC claims raised in a § 2255 case, from those raised on direct appeal. In Braxton v. United States, 358 F.Supp.2d 497 (W.D Va. 2005), the Western District of Virginia noted that although the Fourth Circuit has yet to define the scope of waiver of collateral rights, several courts have held that § 2255 waivers should be subject to the same conditions and exceptions applicable to waivers of the right to file a direct appeal. Braxton, 358 F.Supp. 2d at 502 (citing United States v. Cannady, 283 F.3d 641,645 n. 3

(4th Cir. 2000) (collecting cases); Butler v. United States, 173 F.Supp.2d 489, 493 (E.D. Va. 2001)). Nonetheless, the Western District of Virginia, distinguished the types of IAC claims available on direct appeal from those available in a § 2255 motion. Specifically, the Court noted:

> Appellate courts rarely hear ineffective assistance of counsel claims on direct review. Indeed, '[i]t is well settled that a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.' United States v. King, 119 F.3d 290, 295 (4th Cir. 1997). Therefore, the waiver exception recognized in Attar applies only to a very narrow category of cases. In contrast, a rule that defendants are unable to waive their right to bring an ineffective assistance claim in a § 2255 would create a large exception to the scope of § 2255 waivers. In fact, such an exception would render all such waivers virtually meaningless because most habeas challenges can be pressed into the mold of a Sixth Amendment claim on collateral review. The Fifth Circuit has recognized this dynamic by noting that '[i]f all ineffective assistance of counsel claims were immune from waiver, any complaint about process could be brought in a collateral attack by merely challenging the attorney's failure to achieve the desired result. A knowing and intelligent waiver should not be so easily evaded.' United States v. White, 307 F.3d 336, 344 (5th Cir. 2002).

Braxton, 358 F.Supp.2d at 503.

The Western District of Virginia further noted that the Tenth Circuit has also distinguished collateral-attack waivers from the situation in Attar and that the Fourth Circuit's holding in United States v. Broughton-Jones, 71 F.3d 1143,1147 (4th Cir. 1995), also supports such distinction. Braxton, 358 F.Supp.2d at 503, n. 2. Finally, the Braxton Court found it persuasive that the majority of circuits to have confronted this question "have held that collateral attacks claiming ineffective assistance of counsel that do not call into question the validity of the plea or the § 2255 waiver itself, or do not relate directly to the plea agreement or the waiver, are waivable." Id. at 503. (collecting cases).

Hence, petitioner waived the right to bring claims 1 (ineffective assistance of counsel due to incompetent handling of Motion to Suppress), 3 (ineffective assistance of counsel for failing to obtain Brady material), and 4 (ineffective assistance of counsel for failing to challenge the sufficiency of the indictment). The petition should be denied on these claims.

**B.    Failure to File Notice of Appeal**

In this case, petitioner asserts that he requested his counsel file a notice of appeal at the conclusion of the sentencing hearing, on August 8, 2006, based upon purported errors in the career offender enhancement and an appeal based upon his counsel's ineffectiveness. Petitioner further notes that he wrote counsel a letter on August 27, 2006 requesting counsel file a notice of appeal; counsel responded in writing on August 31, 2006 stating that he had not been retained to represent petitioner's interests on appeal; counsel failed to file an appeal. Therefore, petitioner asserts counsel was per se ineffective for failing to file a notice of appeal as instructed. As held in United States v. Poindexter, 492 F.3d 263, 273 (4th Cir. 2007) an evidentiary hearing is required in such cases to determine whether the petitioner unequivocally instructed his attorney to file a notice of appeal or, if his attorney was not so instructed, the court will determine if petitioner met his burden of showing that: (1) his attorney had a duty to consult under Roe v. Flores-Ortega, 528 U.S. 470 (2000); (2) his attorney failed to fulfill his consultation obligations; and (3) he was prejudiced by his attorney's failure to fulfill these obligations.

The Fourth Circuit Court of Appeals has held that "a criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." United States v. Peak, 992 F.2d 39, 42 (4th Cir. 1993). In rendering this decision, the Court opined:

10

> Persons convicted in federal district courts have a right to a direct appeal. Coppedge v. United States, 369 U.S. 438, 82 S.Ct.917, 8 L.E.2d 21 (1962). In addition, the Sixth Amendment right to counsel extends to the direct appeal, Douglas v. California, 372 U.S. 353, 83 S.Ct. 917, 8 L.Ed.2d 811 (1963), and it obligates the attorney to file the appeal and identify possible issues for the court even if, in the attorney's opinion, those issues are not meritorious. Anders v. California, 386 U.S.738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

Id. at 41.

In Roe v. Flores-Ortega, 528 U.S. 470 (2000), the United States Supreme Court recognized that "[i]f counsel has consulted with the defendant, the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Flores-Ortega, 528 U.S. at 478.

Further, the Fourth Circuit maintains that counsel must file an appeal if instructed to, even if appealing would seem contradictory to client's best interest:

> "[A]n attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement and harmful to the client's interests. In this case, although there is a real possibility that [defendant] will face a higher sentence or even charges related to the [ ] incident if he decides to appeal, his right to appeal cannot be thwarted by attorney error."

United States v. Poindexter, 492 F.3d at 273.

In the case at hand, the Government did respond to petitioner's allegation. The Government contends that petitioner's claim is without merit because counsel was terminated by petitioner at the conclusion of the sentencing hearing. The Government further contends that it would have therefor been unethical for counsel to file a notice of appeal when he was no longer retained as counsel. For support, the Government includes an affidavit from petitioner's former

11

counsel attesting to the Government's explanation of events and copies of correspondence between the petitioner and counsel.

Accordingly, because the petitioner's motion and the Government's response do not conclusively establish that petitioner is entitled to no relief, I find that an evidentiary hearing is necessary to determine whether petitioner requested his attorney file an appeal and whether counsel ignored or refused such instructions. See 28 U.S.C. § 2255 (providing in pertinent part that "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."); see also United States v. Witherspoon, 231 F.3d 923 (4th Cir. 2000).

An evidentiary hearing, solely on the issue of whether petitioner instructed his counsel to file an appeal shall be held at 10:00 a.m., Friday, September 5, 2008, in the United States Magistrate Judge Courtroom, Room 433, 4th Floor, U.S. Courthouse, Wheeling, West Virginia.

Petitioner shall appear by telephone from his place of incarceration. Any other party, counsel or witness who resides or whose principal office is more than 40 miles from the Wheeling point of court may appear by telephone. The Clerk shall set up the conference call.

Brendan Leary, Esq. is appointed to represent petitioner at the evidentiary hearing.

## IV. **RECOMMENDATION**

Based upon a review of the record, the undersigned recommends that the petitioner's §2255 motion be denied and dismissed from the docket because petitioner knowingly, intelligently, and voluntarily waived the right to collaterally attack the sentence with the exception of an evidentiary hearing to determine whether petitioner requested his attorney to file

an appeal and whether counsel ignored or refused instructions.

Within ten (10) days after being served with a copy of this report and recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable John P. Bailey, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985): United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and counsel of record, as applicable.

DATED: June 23, 2008

    /s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE